**In re William G. POISSANT, Debtor.**

No. 08–19592.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 20, 2009.

Jon M. Ginter, Rauser & Associates Legal Clinic Co. LPA, Cleveland, OH, for Debtor.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the motion of RBS Citizen's, NA (the "Bank") for relief from the automatic stay pursuant to Sections 362(d)(1) and (d)(2), and in rem relief pursuant to Section 362(d)(4) of the Bankruptcy Code (the "Code"). The motion is opposed by the Debtor, William G. Poissant (the "Debtor"). Core matter jurisdiction is acquired under 28 U.S.C.

§ 1334 and General Order No. 84 of this District. Following the conclusion of duly noticed hearings and consideration of the record, the following conclusions of law and findings of fact are hereby rendered:

\*

The Debtor filed a voluntary Chapter 13 petition on December 6, 2008. On December 15, 2008, the Debtor filed a motion, to be heard on an expedited basis, to extend the automatic stay under Section 362(c)(3)(B) of the Code (the "Automatic Stay Motion"). The Court granted an extension of the stay after the conclusion of a hearing held on December 18, 2008, in which no party in interest filed papers or appeared in opposition (the "Extension Order").

On January 12, 2009, the Bank filed the present motion, requesting relief from the automatic stay under Sections 362(d)(1) and (d)(2), and in rem relief under Section 362(d)(4) of the Code regarding the Debtor's home. The Bank holds a fully matured mortgage secured by the Debtor's personal residence, with a current balance of $38,927.48. A promissory note was signed in January 1975 by the Debtor and his former spouse, in the principal amount of $52,000. The note has been due and payable since January 1, 2004. The Bank's lien is superior to other asserted liens. According to the Debtor's petition and schedules, the secured liens on his real properly total $265,746.08. The Bank, however, alleges secured liens totaling $424,000. However, it is undisputed that the value of the Debtor's home is $229,600 per the county auditor's report.

The Bank's motion discloses five previous bankruptcy cases commenced by the Debtor since 1999. Each petition was filed, allegedly, to stop a foreclosure sale. The Bank, however, failed to reveal a sixth bankruptcy case commenced by the Debt-

or in 2005, which case immediately preceded the instant one. In 2005, the Debtor filed for Chapter 13 relief (Case No. 05–13863) and successfully funded a plan for several years. During that time, he paid $25,000 towards the Bank's mortgage. These payments amounted to more than half of the loan balance. The Debtor's case was later dismissed for lack of funding after he reportedly incurred severe health problems.

The current bankruptcy case is the Debtor's seventh filing. During the prosecution of the present case, the Bank has received payments under the Debtor's Chapter 13 plan and the Debtor is not delinquent on any plan payments. His source of income consists of money he receives as an accountant consultant and from family contributions. All required schedules and other documents have been filed by the Debtor. Reportedly, the Debtor continues to battle serious health issues, requiring a recent hospital admittance.

\* \*

The dispositive issue for the Court's determination is whether RBS Citizen's, NA is entitled to relief from the automatic stay under Sections 362(d)(1) and (d)(2), and in rem relief under Section 362(d)(4) of the Code.

\* \* \*

The Bank alleges that it is entitled to relief from the automatic stay because its loan has matured, rendering the note fully due and payable in the amount of $38,927.48. It asserts that the Debtor's inability to pay the total balance now is inadequate protection of its security interest. Additionally, the Bank argues that the Debtor's multiple bankruptcy filings constitute a scheme to hinder, delay and defraud the Bank. It further contends that the circumstances surrounding the multiple filings, particularly the fact that they were initiated to stop foreclosure sales of the Debtor's home and the Debtor's conduct regarding the prosecution of his cases, collectively entitle the Bank to in rem relief.

The Debtor opposes the Bank's motion, alleging that the automatic stay has been extended by the Extension Order, which the Bank did not oppose despite being duly noticed. He further argues that the Bank is adequately protected because it occupies a first lien position on property worth $229,600. Additionally, the Court's Extension Order was an implicit finding of the Debtor's good faith. By seeking in rem sanctions regarding the property, the Bank is attempting to relitigate the issue of the Debtor's good faith to which the doctrine of res judicata applies. Further, the Debtor is current in his plan funding and is currently hospitalized. Due to the Debtor's physical condition, the Debtor argues that depriving him use of his personal residence would cause grave results. The Debtor also questions the propriety of the loan balance, asserting that the Bank has not provided him with a detailed statement of payments and charges.

\* \* \* \*

Section 362(d) provides for relief from the automatic stay. In pertinent part, it states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if-

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

. . .

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either—

(A) the transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d).

Section 362(g) provides the requisite burden of proof for a motion brought under 362(d) or (e), which provides:

In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

■ The initial burden of proof is upon the movant, the Bank, to support a motion under Sections 362(d)(1) or (d)(2) for relief from stay, and under Section 362(d)(4) for in rem relief. In reviewing stay relief motions, "courts must determine whether discretionary relief is appropriate on a case-by-case basis." *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir.1994) (citation omitted). Regarding Section 362(d)(1), the Bank has to initially establish that cause exists, while the Debtor bears the ultimate burden on all issues other than the equity in his property. 11 U.S.C. § 362(g). If the Bank cannot make this initial showing, relief should be denied to the Bank without requiring the Debtor to make any showing that he is entitled to continued protection of the automatic stay. *Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir.1990). With regards to Section 362(d)(2), the Bank has to initially establish that there is no equity in the property, while the Debtor as the party opposing the relief sought, bears the burden of proving that the property is necessary to his effective reorganization. *Nazareth Nat'l Bank v. Trina–Dee, Inc.*, 731 F.2d 170, 171 (3d Cir.1984). Finally, in a request for relief under Section 362(d)(4), the Bank bears the initial burden to establish a prima facie case as to all the elements. *In re Muhaimin*, 343 B.R. 159, 169–170 (Bankr.D.Md.2006).

■ The Bank's first ground for relief, Section 362(d)(1), requires the estab-

lishment of "cause." 11 U.S.C. § 362(d)(I). "Cause" includes lack of adequate protection, which the Bank cites as its basis for relief. Adequate protection is not defined in the Code, but Section 361 provides several examples of adequate protection: a cash payment, an additional or replacement lien, or the indubitable equivalent of a secured creditor's interest. 11 U.S.C. § 361. However, adequate protection may be provided only after there is a judicial determination that a secured creditor's interest is not adequately protected. *United Savs. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In *Timbers*, the Supreme Court held that a secured creditor's "interest in property is not adequately protected if the security is depreciating during the term of the stay." *Id.* That is, if the secured property is declining in value or if there is an impairment of the secured creditor's interest, then the creditor is entitled to adequate protection. Here, the Bank undisputedly holds a senior mortgage on the Debtor's personal residence. It is in first lien position, with its loan of $38,927.48 secured by a home valued at $229,600. The Bank is also receiving payments from the Debtor's Chapter 13 repayment plan. It has not contested the value of the Debtor's home or demonstrated any diminution in value of the subject property, nor has it denied that it is receiving payments under the Debtor's plan. Also, the Bank has a significant equity cushion, which is the difference in amount between the Bank's loan and the Debtor's home value. Here, the presence of a sufficient equity cushion (almost $190,000) and the Bank's regular receipt of funds from the Debtor's plan indicate that the Bank's security interest is adequately protected.

 The Court is not unmindful of the Bank's predicament. Imposition of the automatic stay delays the Bank's ability to foreclose on its security interest. As the record indicates, each of the Debtor's cases was precipitated by a pending foreclosure sale. Each time a petition was filed, the Bank was effectively precluded from exercising its rights as a secured creditor, absent a motion for relief from stay granted by the Court. The bankruptcy filings, undoubtedly, caused the Bank to incur additional expense and delay in its ability to foreclose. However, this delay in foreclosure is not a compensated right for which a creditor receives adequate protection. The Supreme Court in *Timbers* unanimously held that " '[t]he interest in property' protected by [Section] 362(d)(1) does not include a secured party's right to immediate foreclosure." *Id.* at 371, 108 S.Ct. 626. Additionally, the Debtor's loan matured prepetition on January 1, 2004. However, the fact that the loan had matured prepetition is not, per se, grounds for relief from the automatic stay, but a factor to be considered by the Court. See, generally, *In re Chang*, 185 B.R. 50 (Bankr.N.D.Ill.1995) and *In re Escue*, 184 B.R. 287 (Bankr.M.D.Tenn.1995).

Here, the Debtor's current case appears to be filed in good faith because he has been regularly funding his Chapter 13 plan and has a plan confirmation hearing pending. Notedly, this Court previously considered the Debtor's good faith in the Debtor's earlier motion for an extension of the automatic stay which was unopposed. The Court's Extension Order constitutes an implicit acknowledgment that the Debtor had not filed his case in bad faith. Thusly, the Bank's motion for stay relief based on "cause" pursuant to Section 362(d)(1) is unfounded and is hereby denied.

 The other proposed ground for stay relief, § 362(d)(2), is equally unavailable to the Bank because the Bank failed

to plead in its motion that the Debtor lacked equity. 11 U.S.C. § 362(d)(2). As the Bank did not make this initial showing that the Debtor lacks equity in his personal residence, the Debtor does not need to come forth with evidence to show that his home is necessary to an effective reorganization. *Timbers,* 484 U.S. at 375–376, 108 S.Ct. 626.

■ Even if the Court was to apply, sua sponte, Section 362(d)(2) to the facts of this case, the Bank would not be entitled to relief under such section. Section 362(d)(2) has two requirements that must be met: that there is no equity and that the property is not necessary to an effective reorganization. *Nazareth Nat'l Bank,* 731 F.2d at 171. In determining whether the Debtor has equity, all liens on the property are counted. "Equity is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." *Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 392 (6th Cir.1986). The Debtor's petition lists the secured claims on his property at $265,746.08, which is greater than the value of his home. Adopting the amount in the Debtor's petition as the correct sum, there is no equity in the property. However, the property is necessary to an effective reorganization. Here, the Debtor uses the property as his personal residence and it is the primary reason for his bankruptcy filings. The Debtor has paid approximately $25,000 (more than half of his mortgage) in his previous Chapter 13 case. The real property has been the Debtor's personal residence since 1975. The Debtor also has severe health problems. Uprooting him from his home at this time would negatively impact his ability to successfully prosecute the adjustment of his debts. These factors, taken together, indicate that the subject property is necessary to the Debtor's rehabilitation. See, *In re Vieland,* 41 B.R. 134, 142–143 (Bankr.N.D.Ohio 1984); *In re Lambert,* 57 B.R. 710, 713–714 (Bankr.N.D.Ohio 1986); and *In re White,* 216 B.R. 232, 236 (Bankr. S.D.Ohio 1997). As such, the Bank's request for relief under Section 362(d)(2) is denied.

■ Lastly, the Bank seeks in rem relief under Section 362(d)(4), which provides a two year relief from the automatic stay against any subsequent bankruptcies that may be filed pertaining to the subject property. Due to the extraordinary impact of this remedy, a creditor requesting such relief has a substantial burden of proof. Section 362(d)(4) requires that three elements be established: i) the debtor engaged in a scheme, ii) to delay, hinder and defraud the creditor, and iii) which involved either the transfer of property without the creditor's consent or court approval *or* multiple filings. Here, the Bank has only shown the existence of a series of bankruptcy filings by the Debtor. It, however, has not established the second element relating to the Debtor's alleged fraudulent intent.

The majority of bankruptcy courts has concluded that the second element—intent to hinder, delay *and* defraud are in the conjunctive, meaning each must be satisfied in order for relief to be granted to the movant under Section 362(d)(4). While the serial filings reflect a delay in allowing the Bank to foreclose on the property, there is nothing before the Court to prove that the Debtor *intended to defraud* the Bank. See, *In re Gould,* 348 B.R. 78, 80 (Bankr.D.Mass.2006); *In re Abdulla,* 2009 WL 348365, at *1 (Bankr.D.Mass. Feb.6, 2009); *In re Young,* 2007 WL 128280, at *8–9 (Bankr.S.D.Tex. Jan.10, 2007); *In re Smith,* 395 B.R. 711, 719 (Bankr.D.Kan. 2008); and *In re Lemma,* 394 B.R. 315, 325 (Bank.E.D.N.Y.2008).

274

The elements of fraud are: i) false representation of a material fact; ii) knowledge of or belief in its falsity by the person making it; iii) belief in its truth by the person to whom it is made; iv) intent that it should be acted upon; and v) detrimental reliance upon it by the person claiming to have been deceived. *In re Meridia Products Liab. Litig.*, 328 F.Supp.2d 791, 819 (N.D.Ohio 2004). Herein, the Bank makes only a conclusory allegation that the Debtor has acted with fraudulent intent without specifying concrete facts or other evidentiary proof to prove its claim by a preponderance of the evidence standard. Thus, the Bank is not entitled to in rem relief under Section 362(d)(4).

Notwithstanding the above factual findings and conclusions of law, upon the Court's receipt of notification by the Chapter 13 Trustee that the Debtor is delinquent in postpetition funding, the Debtor's case will be dismissed with prejudice.

\* \* \* \* \*

Accordingly, the motion of RBS Citizen's, NA for relief from the automatic stay and in rem relief is hereby denied. The Debtor's objection is hereby sustained. Each party is to bear its respective costs.

IT IS SO ORDERED.

### *JUDGMENT*

In Cleveland, in said District, on this *20th* day of May, 2009.

A Memorandum Of Opinion And Order having been rendered by this Court in this matter.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the motion of RBS Citizen's, NA for relief from the automatic stay pursuant to §§ 362(d)(1) and (d)(2), and in rem relief pursuant to § 362(d)(4) of the Bankruptcy

Code is denied. The Debtor's objection is sustained. Each party is to bear its respective costs.

**IT IS SO ORDERED.**