ELECTRONIC CITATION:  2012 FED App. 0004P (6th Cir.)
File Name:  12b0004p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re:   MARTHA LEE,                                  )
                                                     )
            Debtor-Appellant.                        )          No. 11-8053
_____              )

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division at Cincinnati.
No. 11-12011.

Decided and Filed:  April 18, 2012

Before: EMERSON, FULTON and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

_____

**ON BRIEF:**  Nathan L. Swehla, LERNER, SAMPSON & ROTHFUSS, Cincinnati, Ohio, for Appellee.  Martha Lee, Cincinnati, Ohio, pro se.

_____

## OPINION

_____

MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge.  Martha W. Lee, the *pro se* debtor in this case, appeals from a July 14, 2011 bankruptcy court order granting the Appellee's motion to dismiss the debtor's chapter 11 case for abuse.[1]  Consistent with the Judge's remarks at

---

[1]Reference to the appellee in this matter is complicated by a state court merger that took place in April 2011.  When the original mortgage on the property at issue in this case was taken out on July 31, 2006, "JPMorgan Chase Bank, National Association," was the mortgagee.  On November 18, 2008, "JPMorgan Chase Bank, National Association," assigned its interest in the property to "Chase Home Finance, LLC."  On April 27, 2011, "Chase Home Finance, LLC," merged with and into

the hearing, the order also granted Appellee's requests for *in rem* relief against the debtor's real property pursuant to 11 U.S.C. §§ 105 and 362(d)(4) and declared that the case dismissal was with prejudice for a period of 180 days pursuant to 11 U.S.C. § 109(g). The order also included relief not discussed at the hearing.

For the reasons that follow, we affirm in part and remand in part the order of the bankruptcy court.

## I. ISSUES ON APPEAL

The issues presented in this appeal are whether the bankruptcy court erred (1) in dismissing the debtor's chapter 11 case for abuse; (2) in dismissing the debtor's case with prejudice for a period of 180 days pursuant to 11 U.S.C. § 109(g); and (3) in granting Appellee permanent *in rem* relief with respect to the real property at 2309 Kemper Lane in Cincinnati, Ohio pursuant to 11 U.S.C. §§ 105 and 362(d)(4). Additional issues are (1) whether Appellee had standing to move for dismissal of Debtor's case with prejudice pursuant to 11 U.S.C. §§ 349(a) and 1112(b) and (2) whether the order submitted by Appellee and entered by the Court included relief not addressed at the hearing and not available under the statutory provisions on which Appellee relied.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("Panel") has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals

---

"JPMorgan Chase Bank, National Association." The resulting entity is known as "JPMorgan Chase Bank, National Association." Consequently, the post-merger entity and the original mortgagee have the same name.

It is the post-merger entity that filed the motion to dismiss the debtor's bankruptcy case on April 12, 2011. JPMorgan Chase Bank, N.A. filed the motion as "JPMorgan Chase Bank, National Association, Successor by Merger to Chase Home Finance, LLC." In order to clarify which party the Panel is referring to in this opinion, the post-merger entity of "JPMorgan Chase Bank, National Association" will be referred to as "Appellee." All references to the pre-merger entity known as "JPMorgan Chase Bank, National Association," will be to "JPMorgan Chase Bank." All references to Chase Home Finance, LLC will be to "Chase Home Finance."

to the Panel and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

## A. Order Dismissing Case and Granting Appellee *In Rem* Relief from Automatic Stay

An order granting a motion to dismiss a chapter 11 case "for cause" is final for purposes of appeal, *AMC Mortg. Co. v. Tenn. Dep't of Revenue* (*In re AMC Mortg. Co., Inc.*), 213 F.3d 917, 920 (6th Cir. 2000), as is an order which dismisses a case with prejudice. *Cusano v. Klein* (*In re Cusano*), 431 B.R. 726, 729 (B.A.P. 6th Cir. 2010). An order granting relief from the automatic stay is also a final, appealable order. *State Bank of Florence v. Miller* (*In re Miller*), 459 B.R. 657, 661 (B.A.P. 6th Cir. 2011).

The dismissal of a bankruptcy case "for cause" is reviewed for an abuse of discretion as is the determination that said dismissal be with prejudice. *Mitan v. Duval* (*In re Mitan*), 573 F.3d 237, 241 (6th Cir. 2009); *Cusano v. Klein* (*In re Cusano*), 431 B.R. 726, 737 (B.A.P. 6th Cir. 2010). A bankruptcy court's decision to lift the automatic stay pursuant to 11 U.S.C. § 362(d) is also reviewed for an abuse of discretion. *Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co.* (*In re Trident Assoc. Ltd. P'ship*), 52 F.3d 127, 130 (6th Cir. 1995). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*)*,* 392 B.R. 288 (B.A.P. 6th Cir. 2008); *See also Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 607-08 (6th Cir. 2000) ("An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' " (citing *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 770 (6th Cir. 1999) (alteration in original)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d at 608.

**B.      Motions Filed on June 29 and 30, 2011**

In addition to the issues set forth above, Debtor has also asserted that the bankruptcy court erred by refusing to grant four motions she filed on June 29 and 30, 2011:  (1) motion for a jury trial on the issue of dismissal of her case with prejudice, (2) motion to waive the filing fee or extend the time within which to pay the fee, (3)"Motion for disqualifying the Robel [sic] Properties LLC's attorney's qualification," and (4) motion to postpone a ruling on Appellee's motion to dismiss.  The bankruptcy court did not set a hearing on any of the four motions, nor did the court treat those motions as objections to Appellee's motion to dismiss Debtor's case.  The deadline for filing a response to Appellee's Motion to Dismiss was June 2, 2011.  As a result, the motions filed by Debtor on June 29 and 30, 2011, were past the responsive deadline and the bankruptcy court was under no obligation to consider them as responses since they were untimely.  Although the bankruptcy court acknowledged at the June 30, 2011 hearing that Debtor had filed the motions, it did not rule on those motions.  ("The only motion before the court now is the one filed by JP/Morgan Chase."  (June 30, 2011 Transcript of Hearing at 14-15, Bankr. Case No. 11-12011)).  Consequently,  there is no order, interlocutory or otherwise, for this Panel to review with respect to the motions filed by Debtor on June 29 and 30, 2011.

## III.   FACTS

Over the last three years, Martha W. Lee, ("Debtor"), has filed 3 skeletal petitions in the Southern District of Ohio.  On October 20, 2009, Debtor filed a chapter 13 petition for bankruptcy relief which was dismissed on March 5, 2010, for failure to file a plan and/or schedules (case number 09-16913) (the "Chapter 13 Case").  Two months later, Debtor filed a *pro se* chapter 7 petition which was dismissed on October 19, 2010, upon the Chapter 7 Trustee's motion to dismiss for failure to produce proper documentation at the first and fourth settings of her § 341 meeting of creditors (case number10-13250) (the "Chapter 7 Case").  On April 5, 2011, Debtor filed another *pro se* petition, this time under chapter 11, out of which the current appeal arises.

According to the schedules in her chapter 11 case, Debtor is the title owner of ten parcels of real estate in New Jersey and Ohio, including 2309 Kemper Lane in Cincinnati, Ohio (the "Kemper

Lane Property").[2]  Schedule D indicates that Chase Home Finance holds the first mortgage on the property.  Debtor listed the amount of Chase Home Finance's claim as $175,246 with an unsecured portion of $55,246.

According to Schedule I, Debtor's monthly income consists of $1,000 from operation of a food truck and $5,340.00 in rental income from real property.  There is nothing in the petition which indicates which particular parcels of real property generate this income or which parcels are currently occupied; however, Debtor stated in her objection to Appellee's motion to dismiss her case that "most of the properties are currently vacant."

On May 12, 2011,  Appellee filed a motion to dismiss Debtor's case "for cause" ("Motion to Dismiss").[3]  The dispute between Appellee and Debtor centers around the Kemper Lane Property which has a somewhat long and complicated history vis a vis the parties.

After Debtor originally defaulted on the mortgage on the Kemper Lane Property in July 2008, Chase Home Finance filed a state court foreclosure complaint against the property on November 24, 2008.  Chase Home Finance proceeded with the foreclosure action until October 20, 2009, when Debtor's Chapter 13 Case stayed the state court action.  Following dismissal of Debtor's Chapter 13 case on March 5, 2010, Chase Home Finance filed a Notice of Termination of Stay in state court and the foreclosure action resumed.

The foreclosure action was stayed once again when Debtor filed the Chapter 7 Case on May 12, 2010.  Chase Home Finance filed a motion for relief from the automatic stay in that case and that motion was granted without objection on August 16, 2010.  Chase Home Finance resumed its foreclosure action on September 3, 2010, by filing a Motion to Reactivate Proceeding in the state

---

[2]Debtor listed the 2309 Kemper Lane Property as "2309-2311 Kemper Lane" on her petition; however, the copies of the promissory note and mortgage only show the 2309 portion of the property. Neither of these parcels is her residence.

[3]Although Appellee styled its motion as a motion to dismiss "pursuant to 11 U.S.C. Section 1307" and made legal arguments therein pursuant to § 1307(c), the proper section to seek dismissal of Debtor's case was 11 U.S.C. § 1112(b); however, because §§ 1112(b) and 1307(c) both provide for dismissal of a case "for cause," Appellee's error was harmless.

court. The state court granted that motion on September 16, 2010; however, the foreclosure proceeding was stayed a third time when Debtor filed her chapter 11 petition on April 5, 2011. Debtor has made no payments on the Kemper Lane Property since July 2008. The estimated outstanding mortgage arrearage is $65,597.32.

In the Motion to Dismiss, Appellee asserted that Debtor lacked good faith in filing her chapter 11 petition and, in filing three unsuccessful petitions for relief, Debtor was abusing the bankruptcy process and asked that Debtor's case be dismissed "for cause." Appellee also asserted that "unless this case is immediately dismissed and sanctions in the form of a permanent bar from filing or a 180 day bar from filing further petitions for relief is ordered with the dismissal, Debtor will again attempt to frustrate Creditor's right to have its collateral sold at Sheriff's sale." (Mot. To Dismiss at 5). Appellee sought this relief pursuant to 11 U.S.C. §§ 109(g) and 349(a). Lastly, Appellee sought *in rem* relief against the Kemper Lane Property pursuant to 11 U.S.C. § 105 and asked the bankruptcy court to grant it "in rem relief in the form of a permanent bar against the Debtor or anyone in contractual privity with the Debtor or anyone having or purporting to have a possessory interest in the" Kemper Lane Property from ever listing the property or the debt thereon in a future bankruptcy petition. (*Id.* at 7.) Appellee alleged that the bankruptcy court had the power to issue such an order under 11 U.S.C. § 105 because "[s]uch an order is necessary from this Court to prevent the sham of the filings by the Debtor, which is merely a continuing attempt to live rent-free in the Residence."[4] Appellee asserted that a 180-day bar to refiling would not be sufficient to protect their security interest because the Debtor "will find a way to delay the foreclosure case in order to enable [her] to use the bankruptcy system again to thwart Creditor in its effort to liquidate its collateral." (*Id.*)

Debtor filed an objection to the Motion to Dismiss on May 20, 2011 asking the court to withhold its ruling. She did not cite any present circumstances that would justify such a delayed ruling and admitted that her income prospects were speculative, at best. The bankruptcy court set

---

[4]Despite Appellee's reference to the Kemper Lane Property as the "Residence" in its motion to dismiss, Debtor has never used the Kemper Lane Property as her residence. (June 30, 2011 Transcript at 5.)

a hearing on the Motion to Dismiss and Debtor's objection thereto for June 30, 2011. The BNC served notice of this hearing on Debtor on May 28, 2011.

Thirty minutes prior to the hearing on the Motion to Dismiss, Debtor filed a motion to postpone "the judge's decision." Although Debtor had previously been optimistic about her potential to increase her income drastically in a short period of time, she now admitted that she had been unable to do so. Again, she asked the bankruptcy court to delay ruling on the Motion to Dismiss.

The bankruptcy court conducted a hearing on the Motion to Dismiss and Debtor's objection thereto on June 30, 2011. At the hearing, the court made the following statements:

> Ms. Lee, you've been before this Court before on at least two other occasions asking for relief under Title 11. … Both of those cases were dismissed for various reasons … It also seems that you were not aggressively or diligently pursuing your cases as well. It seems as if what's been happening with this Court is that you filed to prevent the foreclosure proceedings from going forward but yet you've not taken the appropriate action in order to get your case in a posture for confirmation in the instance of the Chapter 13 or for relief under Chapter 7. You've not complied with the requirements that have been set forth by the appropriate parties in any of those cases. …
>
> [Y]our opportunities in bankruptcy have not been wisely used. You've let your cases languish, you've not produced documents that were required, you've not followed through on your Chapter 13 Plan and you've not paid [the filing fee] in installments, which is a benefit granted by the Court upon request [allowing] payments on the filing fees which are necessary for you to be able to proceed. Unless you can show status as an in pauperis person you can't necessarily get relief in bankruptcy unless those filing fees are paid. …
>
> And it seems to this Court that you have been using bankruptcy as a buffer to prevent the foreclosure proceedings from going forward and that is not what this bankruptcy court is supposed to do. It's here for those who come before the Court in an honest and forthright manner to be able to get relief in bankruptcy from the oppression of their debt, but they've got to do that in an honest fashion and in a forthright fashion. And from what I see before me and the record here, that's not quite what's been happening here.

(June 30, 2011 Transcript at 7-8, 11, and 13).

Although Appellee's request for permanent *in rem* relief against the Kemper Lane Property included a request that Debtor or anyone in contractual privity with her or anyone purporting to have

a possessory interest in the Kemper Lane Property be "permanently barred from ever listing . . . the debt owed to Creditor in a future bankruptcy petition," there was no mention at the hearing of this aspect of Appellee's requested relief. A review of the bankruptcy court transcript indicates that the court's only intention with regard to the motion for prospective relief from the automatic stay was to prohibit the debtor and those in contractual privity with her from using the automatic stay as a shield against foreclosure:

> And so what they are asking for and what this Court is inclined to grant is a request that the stay under 362 not be affective again if you do file for bankruptcy relating to this property. It seems to me, based upon the record before us, that that's a reasonable request and the relief will be granted. So do you understand that?
>
> . . . .
>
> So if your situation changes and you find yourself in a better position financially, again, the first thing you should do is not to file a pleading with this Court or any other court perhaps until you've found yourself a lawyer and hired that person . . . .
>
> . . . .
>
> If you'll [directed to Appellee's counsel] supply the Court with an order we'll grant both the motion to dismiss with provisions under Section 109(g) as well as the in rem relief that you requested under 362(d)(4) to prevent a filing of bankruptcy and the automatic stay from affecting this particular piece of collateral which is in the possession of your client.

(June 30, 2011 Transcript at 20 and 24).

As directed by the court, Appellee submitted an order granting its motion to dismiss which the court signed and entered on July 14, 2011. Despite the fact that the permanent bar against ever listing the debt in a subsequent case was not discussed at the hearing, the order contained language to that effect:

> (1) The Motion is granted and the within Chapter 11 bankruptcy proceeding is dismissed subject to the conditions set for this order, and that in rem relief should be granted as to the real estate set forth below pursuant to 11 U.S.C. Section 362(d)(4) and Section 105.
>
> > (a) Debtor, or anyone in contractual privity with the Debtor *or anyone having or purporting to have a possessory interest in the real property located at 2309 Kemper Lane, Cincinnati, Ohio 45206 (hereafter "Property"), is permanently barred from ever listing said*

*Property or the debt owed to Creditor in a future bankruptcy petition*; and the automatic stay on any filing of a petition for relief made in violation of such in rem relief shall be declared invalid;

(b) Debtor, Martha Lee, is prohibited from filing any future bankruptcy proceedings for 180 days; and the automatic stay on any filing made in violation of such order be declared invalid.

(Order Granting Motion to Dismiss at 2) (emphasis added). This language mirrors the language in the prayer for relief in Appellee's Motion to Dismiss.

Debtor filed a timely appeal of the July 14, 2011 bankruptcy court order on July 27, 2011.

## IV. DISCUSSION

### A. Standing

In her brief to this Panel, Debtor alleges that Appellee was not the proper party to seek dismissal of her case or to seek relief from the automatic stay on the Kemper Lane Property because it did not have a valid assignment of the mortgage. "It has been reported that In [sic] some of the Appellate decision the court also ruled that the lender must have a valid assignment of mortgage before filing a foreclosure complaint." (Appt. Brief Page 3-1.) The only assignment of the mortgage and note on the Kemper Lane Property occurred on November 18, 2008, when JPMorgan Chase Bank assigned its interest in the property to Chase Home Finance, LLC. Appellee thereafter re-acquired its interest in the property when Chase Home Finance, LLC, merged with and into Appellee on May 1, 2011, under the merger laws of Delaware.

"Generally, issues raised for the first time on appeal are not properly determined by the appellate court." *Burden v. Seafort* (*In re Seafort*), 437 B.R. 204, 224 (B.A.P. 6th Cir. 2010). The issue of standing, however, is an exception to this rule because standing is a jurisdictional bar. *Normali v. O'Donnell* (*In re O'Donnell*), 326 B.R. 901 (B.A.P. 6th Cir. 2005) (unpublished table decision). As a result, even though Debtor failed to raise the issue of Appellee's standing in the bankruptcy court, the Panel may consider it.

Section 1112(b) provides for dismissal of a chapter 11 case "on request of a party in interest." 11 U.S.C. § 1112(b)(1). Section 1109(b) of the Bankruptcy Code provides that "a Party in interest, including . . . a creditor, . . . may raise and appear and be heard on any issue is a case under this

chapter." Under this definition, creditors clearly have standing to request conversion or dismissal of a debtor's case. *In re Abijoe Realty Corp.*, 943 F.2d 121, 125 (1st Cir. 1991); *Mitan v. Duval* (*In re Mitan*), 178 Fed. App'x 503, 506 (6th Cir. 2006). The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(1)(A). "Claim" is defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Section 1109(b) "was intended to confer broad standing at the trial level" in chapter 11 cases. *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3rd Cir. 2011).

It is immaterial to the issue of Appellee 's standing under § 1112(b) whether the mortgage was validly assigned. Assuming, arguendo, that the mortgage or assignment in this case was somehow defective, that defect would not defeat Appellee 's status as a creditor in Debtor's case within the meaning of § 1109(b). Although a defective mortgage or assignment may extinguish a creditor's legal interest in the property and/or defeat his interest as against a subsequent lien creditor or bona fide purchaser, the creditor would still have an equitable interest therein as against the mortgagor. *Drown v. Wells Fargo Bank* (*In re Scott*), 424 B.R. 315, 327 (Bankr. S.D. Ohio 2010); *In re Wright Indus.*, 93 F. Supp. 58, 63 (D. Ohio 1950). Appellee clearly had standing to seek dismissal of Debtor's case under § 1112(b).

To seek relief from the stay pursuant to 11 U.S.C. § 362(d), a party must be a "party in interest." As used in § 362, "party in interest" is not as broad as it is in § 1112(b).

> Generally, the real party in interest under § 362(d) is the one who, under applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit. . . . The determination of whether a party is a "party in interest" for purposes of § 362(d) must be determined on a case-by-case basis, with reference to the interest asserted and how that interest is affected by the automatic stay.

*In re Rice*, 462 B.R. 651, 656 (B.A.P. 6th Cir. 2011) (internal quotation marks and citations omitted.). Because the note and the mortgage were assigned to Chase Home Finance, LLC on November 18, 2008, Debtor contends this entity was the proper party to foreclose on the property.

As stated *supra*, "Chase Home Finance, LLC" merged "with and into" "JPMorgan Chase Bank, National Association" effective May 1, 2011, pursuant to Delaware's Limited Liability Company Act. Del. Code Ann. tit. 6, § 18-101 *et seq.* Section 209 of this act provides that

> (b) Pursuant to an agreement of merger or consolidation, 1 or more domestic limited liability companies may merge or consolidate with or into 1 or more domestic limited liability companies or 1 or more other business entities formed or organized under the laws of the State of Delaware or any other state or the United States . . ., with such domestic limited liability company or other business entity as the agreement shall provide being the surviving or resulting domestic limited liability company or other business entity.
>
> . . .
>
> (g) When any merger or consolidation shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of each of the domestic limited liability companies and other business entities that have merged or consolidated, and all property, real, personal and mixed, and all debts due to any of said domestic limited liability companies and other business entities, as well as all other things and causes of action belonging to each of such domestic limited liability companies and other business entities, shall be vested in the surviving or resulting domestic limited liability company or other business entity, and shall thereafter be the property of the surviving or resulting domestic limited liability company or other business entity as they were of each of the domestic limited liability companies and other business entities that have merged or consolidated, . . . .

Del. Code Ann. tit. 6 § 18-209(b) and (g). Pursuant to this section, JPMorgan Chase Bank and Chase Home Finance merged into one entity on May 1, 2011: "JPMorgan Chase Bank National Association." The resulting entity, JPMorgan Chase Bank, aka the Appellee in this case, stepped into the shoes of Chase Home Finance and gave JPMorgan Chase Bank the right to enforce obligations owing to Chase. *See In re Tamarack Resort, LLC*, No. 09-03911-TLM, 2010 WL 1049955, *4 (Bankr. D. Id. 2010) (following merger of two limited liability companies, all the debts and liabilities of the two LLCs attached to the resulting LLC). As a result, Appellee had standing to seek relief from the stay on the Kemper Lane Property under § 362(d).

**B.      11 U.S.C. § 1112(b)**

The first issue addressing the actions of the bankruptcy court is whether it erred in dismissing Debtor's chapter 11 case "for cause." Such dismissal is provided for in 11 U.S.C. § 1112(b)(1) which states, subject to exceptions not applicable in this case,

on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause . . .*

11 U.S.C. § 1112(b)(1) (emphasis added). Section 1112(b)(4) contains a non-exhaustive list of examples of "cause" justifying dismissal of a chapter 11 case. These examples include:

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
. . .
(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
. . .
(E) failure to comply with an order of the court;
. . .
(K) failure to pay any fees or charges required under chapter 123 of title 28;
 . . .
(M) inability to effectuate substantial consummation of a confirmed plan;

11 U.S.C. § 1112(b)(4).


Although a debtor's bad faith is not included in the non-exhaustive list in § 1112(b)(4), it is well-settled in the Sixth Circuit that a debtor's bad faith in filing a chapter 11 may serve as cause for dismissal under § 1112(b)(1). *Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co.* (*In re Trident Assocs. Ltd. P'ship*), 52 F.3d 127, 130 (6th Cir. 1995); *Mich. Nat'l Bank v. Charfoos* (*In re Charfoos*), 979 F.2d 390, 392 (6th Cir. 1992). The party seeking dismissal of a case under § 1112(b) must demonstrate a debtor's bad faith by a preponderance of the evidence. *Alt v. United States* (*In re Alt*), 305 F.3d 413, 420 (6th Cir. 2002); *In re Westgate Props., Ltd.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010). A bankruptcy court has broad discretion to determine if dismissal of a chapter 11 case for cause is warranted. *In re Gateway N. Estates, Inc.*, 165 B.R. 427, 428 (E.D. Mich. 1994). "Accordingly, the decision to dismiss the case will be upheld unless it was an abuse of discretion, defined as 'a definite and clear conviction that the trial court committed a clear error of judgment.' " *In re AMC Mortg. Co.*, 213 F.3d at 920 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir.1996)).


No single test exists for determining whether a bankruptcy petition was filed in good faith. *Trident Assocs. Ltd. P'ship,* 52 F.3d at 131. Instead, it "is a fact-specific and flexible determination"

that must be made on a case-by-case basis by looking to a totality of the circumstances. *In re Alt*, 305 F.3d at 419; *Metro Emps. Credit Union v. Okoreeh-Baah* (*In re Okoreeh-Baah*), 836 F.2d 1030, 1033 (6th Cir. 1988) ("Good faith is an amorphous notion, largely defined by factual inquiry."). A debtor with no current income and whose prospects for future income are "tentative at best" will have difficulty demonstrating that he has any good faith ability to effectuate a plan of reorganization under chapter 11. *In re Mitan*, 168 B.R. 326, 329 (Bankr. E.D. Mich. 1994). Serial filings of a chapter 11 petition can also evidence a lack of good faith justifying dismissal if the filings are abusive. *Primestone Inv. Partners, L.P. v. Vornado PS, L.L.C.* (*In re Primestone Inv. Partners, L.P.*), 272 B.R. 554, 557 (D. De. 2002). If a court determines that a debtor has filed her chapter 11 petition in bad faith, dismissal of the case rather than conversion is warranted. *Results Sys. Corp. v. MQVP, Inc.*, 395 B.R. 1, 5 (E.D. Mich. 2008) ("[A]bsent a finding of bad faith or extreme circumstances, the motion to convert should be granted." (internal citation and quotation marks omitted)).

In the case presently before the Panel, the bankruptcy court stated numerous reasons it was dismissing Debtor's case under § 1112(b) including Debtor's serial filings; failure to "aggressively or diligently" pursue any of her cases; failure to comply with the filing requirements in any of her cases; failure to produce documents at two of the four § 341 meetings in her Chapter 7 Case; and failure to pay the filing fee in installments by the deadlines in her chapter 11 case. The bankruptcy court also stated that it appeared Debtor's primary reason for filing her bankruptcy petitions was to stop foreclosure proceedings on her real property. All in all, the bankruptcy court concluded that Debtor's actions did not lead it to believe that Debtor was seeking bankruptcy relief in an "honest and . . . forthright fashion."

The bankruptcy court clearly did not abuse its discretion in granting Appellee 's Motion to Dismiss Debtor's bankruptcy case for cause pursuant to 11 U.S.C. § 1112(b).

## C.    11 U.S.C. §§ 109(g) and 349(a)

The bankruptcy court provided in its July 14, 2011 order that dismissal of Debtor's case was with prejudice for a period of 180 days. Section 349(a) of the Bankruptcy Code provides that

"[u]nless the court, for cause, orders otherwise, . . . dismissal of a case under this title [does not] prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title." Section 109(g) provides:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if–

>> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case;

11 U.S.C. § 109(g). Taken together, §§ 109(g) and 349(a) grant a bankruptcy court the authority to prohibit bankruptcy filings for at least 180 days "for cause." *Cusano v. Klein* (*In re Cusano*), 431 B.R. 726, 736 (B.A.P. 6th Cir. 2010). "Section 109(g) represents Congress's response to the problem created by those debtors who make sequential filings to abuse the Code and creditors." *In re Pike*, 258 B.R. 876, 881 (Bankr. S.D. Ohio 2001). Pursuant to 11 U.S.C. § 362(b)(21), the automatic stay does not apply to "any act to enforce any lien against or security interest in real property" in cases in which the debtor is ineligible for bankruptcy relief under § 109(g).

Although"willful" as used in § 109(g)(1) is not defined in the Bankruptcy Code, courts have held that

> a mere failure to make a payment under a Chapter 13 plan or failure to appear at the first meeting or a court hearing, will not, in itself, be sufficient to sustain a finding of willful conduct under this subsection.

> On the other hand, the court will construe repeated failure to appear or lack of diligence as willful conduct. Repeated conduct strengthens the inference that the conduct was deliberate. Additionally, the court will infer from a pattern of dismissals and refilings in unchanged circumstances willful failure to abide by orders of the court and an abuse of the bankruptcy process which this amendment was designed to prevent.

*In re Nelkovski*, 46 B.R. 542, 544 (Bankr. N.D. Ill. 1985). *See also Casse v. Key Nat'l Bank Assoc.* (*In re Casse*), 198 F.3d 327, 336-37 (2nd Cir. 1999) (agreeing with Sixth Circuit cases).

In the case presently before the Panel, the bankruptcy court set forth numerous reasons why it was dismissing Debtor's case with prejudice for a period of 180 days under §§ 109(g) and 349(a). The court determined that Debtor was a serial filer who had repeatedly sought the protections of the Bankruptcy Code in an effort to thwart the foreclosure efforts of Appellee. The bankruptcy court also found that Debtor had failed in her chapter 11 case, as well as her two prior cases, to comply with her statutory duties by not filing her schedules with her petition, by not paying the filing fee in installments in the chapter 11 case timely and by failing to produce the required documentation at her § 341 meeting of creditors in her Chapter 7 Case. The bankruptcy court concluded that Debtor's behaviors had frustrated the bankruptcy process in three cases and that she did not appear to be seeking bankruptcy relief in a "forthright" manner.

In this case, the bankruptcy court dismissed Debtor's case with prejudice only after finding that Debtor had willfully failed to abide by her statutory duties under the Bankruptcy Code and had abused the bankruptcy process by repeatedly filing for bankruptcy relief. Based on the evidence that was before it, the bankruptcy court did not abuse its discretion in granting Appellee's request for dismissal with prejudice for a period of 180 days.

**D.     11 U.S.C. §§ 105(a), 349(a) and 362(d)(4)**

The July 14, 2011 order also provided for permanent *in rem* relief against the Kemper Lane Property such that "Debtor, or anyone in contractual privity with the Debtor or anyone having or purporting to have a possessory interest in the [Kemper Lane Property] is permanently barred from ever listing said Property or the debt to [Appellee ] in a future bankruptcy petition; and the automatic stay on any filing of a petition for relief made in violation of such in rem relief shall be declared invalid." The order stated the relief was granted pursuant to 11 U.S.C. §§ 105 and 362(d)(4).

The Panel will first address the permanent *in rem* relief as it relates to Debtor or anyone in contractual privity with Debtor. Section 362(d)(4) of the Bankruptcy Code provides

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
>     . . .

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--

> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

> (B) multiple bankruptcy filings affecting such real property.

> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C.A. § 362(d)(4). Section 362(b)(20) further provides that the filing of a bankruptcy petition does not operate as a stay against

> any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of entry of such order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing;11 U.S.C. § 362(b)(20).

A creditor moving for relief pursuant to § 362(d)(4) "bears the initial burden to establish a prima facie case as to all the elements." *In re Poissant*, 405 B.R. 267, 273 (Bankr. N.D. Ohio 2009). Under § 362(d)(4), a creditor must prove that (1) the debtor engaged in a scheme, (2) to delay, hinder or defraud the creditor, and (3) which involved either the transfer of property without the creditor's

consent or court approval or multiple filings.[5]  *Id*.  In order for § 362(d)(4) relief to be effective, the order granting the relief must be recorded "in compliance with applicable laws governing notices of interests or liens in real property."  11 U.S.C. § 362(d)(4).  *See also General Motors Co. v. Heraud* (*In re Heraud*), 410 B.R. 569, 578-79 (Bankr. E.D. Mich. 2009) (a continuing pattern of wrongful behavior is a stronger indication of actual intent); *In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008) (a "scheme" is "a plan or design or an 'artful plot'"); *In re Henderson*, 395 B.R. 893, 902 (Bankr. D.S.C. 2008) (a court may infer an intent to hinder or delay from serial bankruptcy filings if the debtor sought repeated bankruptcy protection for the sole purpose of stopping foreclosure actions); *Matter of McKanders*, 42 B.R. 108, 109 (Bankr. N.D. Ga. 1984) (filing bankruptcy petition as means of stopping a state foreclosure on real property qualifies as a plan to hinder and delay a creditor's rights to property).

Debtor had notice of the hearing on Appellee's Motion to Dismiss which included the request for *in rem* relief.  A copy of the motion and notice of the hearing were served on Debtor at her residence thereby giving her husband constructive notice of the matter.  The bankruptcy court set forth detailed reasons for its dismissal of Debtor's case with prejudice and its imposition of *in rem* relief against the Kemper Lane Property.  The bankruptcy court determined Debtor was a serial filer who had abused the bankruptcy process and Appellee's rights by continually thwarting the foreclosure proceedings.  Appellee has been attempting to foreclose on the Kemper Lane Property since 2008—all the while not receiving any type of payment from Debtor.  Every time Appellee made progress in the state court foreclosure proceedings, Debtor would file a new bankruptcy petition.

Additionally, Debtor's filings in her bankruptcy cases, as well as her pleadings in this appeal, indicate that  circumstances have not changed between her bankruptcy filings.  On her statement of current monthly income in her Chapter 13 Case, Debtor indicated that her only source of income was $7,645.00 per month from her rental properties and $2,500.00 in child support.  When she filed the Chapter 7 Case in 2010 and her chapter 11 case in 2011, her sole source of monthly income was the

---

[5]*Poissant* was issued prior to the 2010 amendments to § 362(d)(4).  As a result, the court listed the second element of a § 362(d)(4) action as "to delay, hinder, and defraud." *Poissant*, 405 B.R. at 273.

rental property. Debtor stated in her objection to Appellee 's motion to dismiss that most of the rental properties were currently vacant. And, despite all her assertions about her hopes for the food truck business and the online auction site, Debtor has demonstrated no realistic ability to establish those businesses in the near future. She does not have a business license for either, does not own a food truck, and has not located suppliers or customers for the online business.

Based upon all of the evidence before it, the bankruptcy court did not abuse its discretion in granting Appellee permanent *in rem* relief against the Kemper Lane Property as it relates to Debtor and anyone in contractual privity with the Debtor.

The Panel will now address the language in the July 14, 2011 order which purports to (a) impose a permanent injunction against "anyone having or purporting to have a possessory interest in the [Kemper Lane Property]" without limiting such injunction to individuals whose claim would be derived from the debtor and (b) enjoin the Debtor and other categories of individuals from listing debt associated with the Kemper Lane Property in future bankruptcy cases.

With respect to the language addressing a permanent injunction against anyone having a possessory interest in the Kemper Lane Property, the Panel could infer that submitting counsel merely erred in not stating that parties bound by the injunction would only be those whose claim was derived from the debtor. As drafted, however, the injunction could be construed somehow to run with the Kemper Lane Property. In any event, counsel who prepared the order simply parroted the relief originally requested in the motion. Once a hearing has occurred with respect to a contested matter, prevailing counsel needs to revisit what relief the judge noted as appropriate at the hearing. If the moving party has requested relief on which the hearing record is silent, the moving and generally prevailing party cannot always treat the situation as if all requested relief has been granted. The bankruptcy judge in this case dealt with this matter in detail. It was certainly open to movant's counsel to seek clarification from the bankruptcy judge about whether the other aspects of relief in the prayer would be granted by the Court. This is especially so in light of the Southern District of Ohio Bankruptcy Court's Local Rule L.B.R. 9072-1, titled "Orders--Proposed." Subsection (f) of that rule provides

(f) Submission of Proposed Order Following Hearing or Trial.  Unless otherwise ordered by the court, within seven (7) days after hearing or trial, the prevailing party shall submit to the court a proposed order *conforming to the court's decision*.  The use of telephone or other authorization for opposing counsel's signature is encouraged by the court, but the signature of opposing counsel is not required for entry of the court's order.

S.D. Ohio L.B.R. 9072-1(f) (emphasis added).

Potentially more troubling is the language enjoining the listing of a debt associated with the Kemper Road Property in a future bankruptcy case.  Such relief could be construed as the functional equivalent of treating any deficiency that would result from the disposition of the Kemper Lane Property as a nondischargeable debt.  Movant had not raised § 523 in its motion, nor would a motion be the appropriate procedure for doing so.  Had movant's counsel sought clarification from the bankruptcy judge at the hearing about whether such relief would be granted as a result of its §§ 362 and 549 motion, this Panel is confident that the bankruptcy judge would have analyzed that issue as carefully as he did the dismissal and *in rem* relief with respect to the Debtor.

This Panel consists of bankruptcy judges who are keenly aware of the high volume of orders that bankruptcy courts enter on a daily basis, in numerous procedural settings ranging from default to consensual with respect to certain parties in a case to orders following hearings of contested matters.  Changes in court technology have facilitated the uploading of proposed orders to bankruptcy courts.  On a typical day it is not unusual for a single bankruptcy judge to be in receipt of 100 or more proposed orders.  The duty of submitting counsel to prepare accurate proposed orders is paramount in today's bankruptcy practice.  Bankruptcy counsel often start with templates.  The use of such templates can contribute to efficiency in their practice, but counsel must recognize that templates addressing prayers for relief (1) must not exceed the scope of relief which a court could afford in the particular procedural setting and (2) must be reviewed in the context of hearing activity in the particular case.

Based upon the foregoing, the Panel will remand the July 14, 2011 order to the bankruptcy court with instructions to enter an amended order which accurately reflects the bankruptcy court's

ruling at the June 30, 2011 hearing such that the *in rem* relief applies to the Debtor and anyone in contractual privity with the debtor.

### E.       Debtor's Remaining Allegations

In addition to the issues already discussed, Debtor also made allegations that the bankruptcy court violated her due process rights under the 7th and 14th Amendments. Her argument centers around the bankruptcy court's alleged failure to grant her request for a "jurial trial," (Apt. Brief Page 4-1), and the bankruptcy court's alleged deprivation of her property. Each argument is wholly without merit. As stated supra, Debtor filed a motion for a jury trial on June 30, 2011; however, the bankruptcy court did not set that motion for a hearing or issue an order denying that motion. Although the bankruptcy court stated in court that Debtor was not entitled to a jury trial, of Appellee's Motion to Dismiss, the bankruptcy court specifically stated that Debtor's motion for a jury trial was not properly before the court at the June 30, 2011 hearing and the bankruptcy court did not issue an order on Debtor's jury trial motion. As such, that issue is not properly before the Panel.

Even if the Panel were to determine that the bankruptcy court's July 14, 2011 order had the effect of denying Debtor's jury motion, there would be no relief this Panel could grant her. Pursuant to 28 U.S.C. § 157(e), a bankruptcy court may conduct a jury trial in a core proceeding "only if 'specially designated' by the district court *and* 'with the express consent of all the parties." *Vigh v. Yates* (*In re Vigh*), 85 F.3d 630 (6th Cir. 1996) (citing 28 U.S.C. § 157(e) (emphasis added)). Appellee did not consent to a jury trial in this matter. Consequently, the bankruptcy court could not have granted Debtor's motion.

Debtor's allegations regarding deprivation of her property rights in violation of the Fourteenth Amendment concern Rebel Properties, LLC, (referred to by Debtor as "Robel Properties LLC") and their foreclosure of Debtor's property on "Race Street"in Cincinnati. Rebel Properties, LLC, never sought any relief in Debtor's chapter 11 case nor did they join with Appellee in seeking dismissal of Debtor's case. The Race Street properties were not at issue in the dispute with Appellee. Rebel Properties, LLC, also never sought any type of relief in either of Debtor's 2 previous bankruptcy cases. Considering the fact that Ohio is a judicial foreclosure state, any sale of

the Race Street Properties had to be set in motion well before dismissal of the instant chapter 11 case. Unless Rebel Properties allegedly violated the automatic stay by proceeding with the state court foreclosure action, any challenge Debtor wants to make to the state court proceeding, including any alleged due process violations caused therefrom, needs to be made in state court, not in the bankruptcy court or with this Panel. For all of these reasons, Debtor's arguments in her brief regarding Rebel Properties, LLC, or the Race Street Properties are inapplicable to this appeal.

## V. CONCLUSION

For the foregoing reasons, the Panel affirms that portion of the bankruptcy court's July 14, 2011 order granting Appellee's Motion to Dismiss Debtor's chapter 11 case for abuse with prejudice for 180 days. The Panel also affirms that portion of the bankruptcy court's order which grants Appellee's request for *in rem* relief against the Kemper Lane Property pursuant to 11 U.S.C. §§ 105 and 362(d)(4) insofar as it applies to Debtor and anyone in contractual privity with the Debtor. The Panel, however, remands the July 14, 2011 order to the bankruptcy court with instructions to enter an amended order so that the relief set forth in that order accurately reflects the bankruptcy court's ruling at the June 30, 2011 hearing.